IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GLENDA J. BEAUCHAMP PLAINTIFF

V. NO. 13-3022

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Glenda J. Beauchamp, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on February 23, 2011, alleging an inability to work since January 1, 2011, due to fibromyalgia, gout, high blood pressure, and bone spur on left heel. (Tr. 62-64, 152,156). An administrative hearing was held on January 9, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 27-61).

By written decision dated February 3, 2012, the ALJ found that Plaintiff had an

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.



AO72A
(Rev. 8/82)

impairment or combination of impairments that were severe - hypertension, osteoarthritis of the cervical spine, and fibromyalgia syndrome. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Tr. 15). The ALJ found that pursuant to Medical-Vocational Rule 201.18, Plaintiff was not disabled. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 30, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 10). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 19, 20).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence



AO72A
(Rev. 8/82)

exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## III. Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to give proper weight to the opinion of Dr. Kevin Jackson, Plaintiff's treating physician; 2) The ALJ erred by misstating Plaintiff's fibromyalgia symptoms and activities in violation of SSR 12-2p; and 3) The ALJ failed to re-contact Dr. Shannon H. Brownfield for clarification. (Doc. 19). The Court will treat Plaintiff's first argument as a challenge to the ALJ's RFC determination; the second argument as a challenge to the ALJ's credibility findings; and the third argument as one of failure to fairly and fully develop the record.

### A. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's

limitations and to determine how those limitations affect his RFC." Id.

Plaintiff argues that the ALJ failed to give proper weight to Dr. Jackson's opinion. "The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000)(citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Dr. Jackson was Plaintiff's treating physician for several years. The first medical record in the file reflects that Plaintiff saw Dr. Jackson on April 20, 2010, complaining of headaches, pain in the back of her head and in her neck. (Tr. 229). At that visit, Dr. Jackson reported that Plaintiff's reflexes were normal and she had 2+ symmetrically of her knees and Achilles. Her gait was within normal limits, and she was tender over the posterior cervical spine and trapezius musculature. (Tr. 229). Plaintiff next saw Dr. Jackson on November 30, 2010, with head and chest congestion. (Tr. 226).

On January 20, 2011, Plaintiff complained to Dr. Jackson that she had pain in her back, neck, hands, and shoulders, which were swelling and painful. (Tr. 224). Dr. Jackson continued to report that her extremities showed no cyanosis, clubbing, or edema and her reflexes were normal and she had 2+ symmetrically of knees and Achilles, and her gait was within normal limits. (Tr. 224). Plaintiff complained again to Dr. Jackson that her muscles hurt on March 1,



AO72A
(Rev. 8/82)

2011. (Tr. 220). Again, it was reported that her extremities showed no cyanosis, clubbing, or edema, and reflexes were the same as previously reported, as was her gait. (Tr. 220). On March 22, 2011, Plaintiff saw Dr. Jackson, who reported that the swelling in her hands was better, but other joints were hurting. (Tr. 217). Dr. Jackson again reported that her extremities showed no cyanosis, clubbing or edema, and her reflexes and gait were the same as previously reported . (Tr. 217).

The next report of Dr. Jackson is the progress note dated October 3, 2011, where Dr. Jackson reported the swelling in Plaintiff's hands were better, and her reflexes and gait were as previously noted. (Tr. 273. Also on October 3, 2011, Dr. Jackson prepared a Medical Source Statement - Physical, wherein he severely limited Plaintiff's activities. (Tr. 271-272). Dr. Jackson completed another Medical Source Statement - Physical, dated December 23, 2011, again severely limiting Plaintiff's activities. (Tr. 275-276). Dr. Jackson also completed a Medical Source Statement - Mental, on December 23, 2011. (Tr. 278-279).

On June 10, 2011, Dr. Shannon H. Brownfield conducted a General Physical Examination, finding that all ranges of motion in Plaintiff's extremities were normal but with pain, she had reduced range of motion in her spine, and she was able to do all limb functions. (Tr. 239-240). Dr. Brownfield found Plaintiff had globally moderate to severe limitations and severe/no prolonged ability to stand, sit, or use her hands or kneel. (Tr. 237-241).

On June 12, 2011, non-examining consultant, Dr. Bill F. Payne found Plaintiff was capable of performing light work. (Tr. 244-251).

Dr. Jackson referred Plaintiff to Dr. Ronald Rubio, of North Arkansas Rheumatology, PLC, and Dr. Rubio saw Plaintiff on June 27, 2011. (Tr. 252). Dr. Rubio found that with respect



AO72A
(Rev. 8/82)

to Plaintiff's musculoskeletal condition, Plaintiff's strength was 5/5 and symmetric in bilateral upper and lower extremities in both proximal and distal muscle groups, he had diminished neck extension, forward flexion and extension of her lumbar spine without pain, normal abduction and adduction of her shoulders, normal range of motion in her elbows, normal extension and flexion bilaterally of her wrists, good grip and curl of her hands, normal range of motion in her knees, and normal, non tender feet. (Tr. 253). Dr. Rubio emphasized low impact exercises to Plaintiff and referred her to Jones PT for an aquatic exercise program. (Tr. 254). Plaintiff saw Dr. Rubio again on July 12, 2011, and Plaintiff reported she had not done her aquatic exercise program because of financial limitations. (Tr. 255). Dr. Rubio found positive tenderness to all trigger points and diminished neck extension. (Tr. 255). Dr. Rubio also encouraged Plaintiff to perform regular low impact exercises and neck stretching/strengthening exercises at home. (Tr. 255). In a record dated July 13, 2011, from North Arkansas Rheumatology, Plaintiff's musculoskeletal strength was reported as 5/5, with the same normal ranges of motion as indicated above, and good grip and curl. (Tr. 257-258).

After reviewing all of the evidence in the record, the ALJ addressed Plaintiff's impairments, the medical records, and Plaintiff's own complaints of her limitations. (Tr. 16-20). The ALJ gave Dr. Brownfield's opinion limited weight, finding that his conclusion was inconsistent with those of Plaintiff's treatment providers, and that Dr. Brownfield's "moderate" and "severe" limitations were not defined in useful terms. (Tr. 20). The Court also believes there are inherent inconsistencies in Dr. Brownfield's report, such as the fact that he found all ranges of motion to be normal but with pain, and that Plaintiff was able to do all limb functions, but concluded that Plaintiff had severe limitations in her ability to stand, sit, use hands, and kneel.



AO72A
(Rev. 8/82)

(Tr. 239-241). The Court finds the ALJ was justified in giving Dr. Brownfield's opinion limited weight.

The ALJ discussed Dr. Jackson's opinion at length and determined it deserved no weight. (Tr. 19). He found that Dr. Jackson gave no indication as to what objective evidence he relied upon in rendering his assessments, and that his own treatment notes failed to reveal findings that would suggest limitations to the extent he indicated. (Tr. 19). The Court agrees. Throughout Dr. Jackson's reports, as indicated above, Dr. Jackson reported that Plaintiff's reflexes were normal and she had 2+ symmetrically of her knees and Achilles. Her gait was also within normal limits, and Dr. Jackson continued to report that her extremities showed no cyanosis, clubbing, or edema.

In addition, the ALJ had before him the opinion of Dr. Rubio, a specialist, who found Plaintiff's strength to be 5/5, that she had normal range of motion in her elbows, normal extension and flexion bilaterally of her wrists, and good grip and curl of her hands. (Tr. 253). Dr. Rubio also encouraged Plaintiff to perform regular low impact exercises and neck stretching/strengthening exercises at home. (Tr. 255). The ALJ also had before him the Physical RFC Assessment of Dr. Bill F. Payne, and although Dr. Payne found Plaintiff capable of performing light work, the ALJ determined that Plaintiff's impairments and subjective complaints were more limited than found by Dr. Payne, and reduced the RFC accordingly. (Tr. 20).

Based upon the foregoing, the Court finds there is substantial evidence to support the weight the ALJ gave to all of the medical opinions as well as his RFC assessment.

**B. Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective



AO72A
(Rev. 8/82)

complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that although Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms reasonably related to those impairments, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 16). The ALJ also indicated that the evidence as a whole suggested a tendency towards exaggeration, and pointed out instances which substantiated this statement. (Plaintiff testified she had gained 30 pounds within the last six months even though treatment records show in November 2010 she weighed 178 pounds and October 2011 records showed she weighed 178 pounds (Tr. 226, 273); Plaintiff testified she had to stop and stretch every 10 to 15 miles on her way to the hearing, which was 140 to 160 miles away (Tr. 47); and Plaintiff's treatment records revealed no eye disease that would affect her ability to see. (Tr. 18-19).

The Court finds that there is substantial evidence to support the ALJ's credibility findings.

**C. Failure to Fairly and Fully Develop the Record:**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

Plaintiff argues that the ALJ should have re-contacted Dr. Brownfield for clarification. However, the Court finds that the record regarding Plaintiff's functional limitations was not inadequate for the ALJ to make a determination. As indicated above, there were treating physician records, a General Physical Examination, a Physical RFC Assessment, a Case Analysis affirming the Physical RFC Assessment, Medical Source Statements, and the findings of the specialist, Dr. Rubio, for the ALJ to consider. There was therefore no reason for the ALJ to re-contact Dr. Brownfield for clarification.

Based upon the foregoing, the Court hereby finds there is substantial evidence to find that the record was fairly and fully developed regarding Plaintiff's functional limitations.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 13th day of March, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)